FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jan 24, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CATINA G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY,[2] <br><br> Defendant. | No. 1:21-CV-03027-ACE <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS <br><br> **ECF Nos. 16, 18** |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 18.  Attorney Kathryn Higgs represents Catina G. (Plaintiff); Special Assistant United States Attorney Ryan Lu represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment;

---

[1]To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

**DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on October 4, 2018, alleging disability since April 16, 2018. Tr. 15, 68, 231-46. The applications were denied initially and upon reconsideration. Tr. 128-31, 136-49. Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on September 17, 2020, Tr. 33-67, and issued an unfavorable decision on October 26, 2020. Tr. 12-32. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on January 15, 2021. Tr. 1-6. The ALJ's October 26, 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 23, 2021. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.

*Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On October 26, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-32.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through December 31, 2023, had not engaged in substantial gainful activity since her alleged onset date.  Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: depression, anxiety, impingement syndrome of the right shoulder, plantar fasciitis and plantar spur, mild bilateral knee degenerative joint disease, status-post repair of bilateral shoulder rotator cuff tears, asthma, and obesity.  *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

> [Plaintiff] can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently.  She can stand and/or walk approximately 4 hours and can sit for approximately 8 hours per workday with normal breaks.  She can never climb ladders, ropes, or scaffolds.  She can frequently balance and stoop.  She can occasionally kneel, crouch, and crawl.  Right overhead reaching is limited to 10 pounds occasionally. She should avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as working with dangerous machinery and work at unprotected heights.  She is limited to simple, routine tasks in a routine work environment with simple, work-related decisions.

Tr. 19-20.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 24.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national

economy, including the jobs of: storage facility rental clerk, office helper, and survey worker.  Tr. 25.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision.  Tr. 26-27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (3) whether the ALJ conducted a proper step-five analysis.  ECF No. 16 at 4.

## DISCUSSION

### A.    Medical Opinions

Plaintiff contends the ALJ erred in evaluating the medical opinion evidence. ECF No. 16 at 11-16.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings.  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings

from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).
The factors for evaluating the persuasiveness of medical opinions and prior
administrative findings include supportability, consistency, the source's
relationship with the claimant, any specialization of the source, and other factors
(such as the source's familiarity with other evidence in the file or an understanding
of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(1)-(5),
416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ
must explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2),
416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors,
but is not required to do so, except in cases where two or more opinions are equally
well-supported and consistent with the record.  *Id.*  Supportability and consistency
are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit recently addressed the issue of whether the new regulatory
framework displaces the longstanding case law requiring an ALJ to provide
specific and legitimate reasons to reject an examining provider's opinion.  *Woods
v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

*Dr. Fitterer and Dr. Staley*

On December 26, 2018, the state agency medical consultant, Norman Staley, MD, reviewed Plaintiff's records and provided an opinion on her level of functioning. Tr. 75-78. Dr. Staley opined Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; she was able to stand and walk for a total of 4 hours in an eight-hour day, and sit for about six hours in an eight-hour day; she could occasionally climb ramps and stairs but should never climb ladders, ropes, or scaffolds; she could occasionally balance and frequently stoop, kneel, crouch and crawl; she was limited to occasional overhead reaching on the right; and she should avoid concentrated exposure to extreme cold and vibrations and hazards. *Id.*

On April 6, 2019 the state agency medical consultant, JD Fitterer, MD, affirmed Dr. Stanley's opinion, except Dr. Fitterer opined she was restricted to frequent balancing and frequent overhead reaching on the right. Tr. 105-08. The ALJ found the opinions of Dr. Fitterer and Dr. Stanley persuasive but adopted Dr. Staley's more restrictive limitation to occasional overhead reaching on the right. Tr. 23.

1      The ALJ found the state agency medical opinions were generally supported

2  by physical exam findings.  Tr. 23.  Supportability is one of the most important

3  factors an ALJ must consider when determining how persuasive a medical opinion

4  is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective

5  evidence and supporting explanations that support a medical opinion, the more

6  persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

7  Here, the ALJ found the state agency opinions were "generally supported by the

8  physical exam findings showing [Plaintiff] to have some reduced range of motion

9  on her shoulders and knees but improved strength, gait, and range of motion with

10  treatment." Tr. 23.  The ALJ does not cite evidence to support her conclusion the

11  state agency opinions were supported by physical exam findings, but the ALJ

12  provided a summary of the medical evidence earlier in the decision.  *See* Tr. 21-23.

13      In the summary of medical evidence, the ALJ noted that Plaintiff also began

14  reporting left shoulder issues, without specifying when this occurred, and that an

15  MRI in March 2019 showed a rotator cuff tear on the left and Plaintiff underwent

16  left shoulder rotator cuff repair in May 2019.  Tr. 21 (citing Tr. 487, 489); *see* Tr.

17  545-46.  Review of the medical records shows that Plaintiff was reporting left

18  shoulder pain by December 2018, with physical exam findings including decreased

19  range of motion and decreased strength on the left; and that her primary care

20  provider noted rotator cuff injury on the left was suspected at that time.  Tr. 416-

21  18.  By February 2019 her orthopedic surgeon, Dr. Griffiths, noted objective

22  findings including tenderness and reduced strength and range of motion on the left,

23  and reported that "she is quite limited and [with] painful motion globally about the

24  left shoulder with positive impingement signs with pronounced pain and weakness

25  with isolated supraspinatus testing at the left shoulder."  Tr. 432-44.  Dr. Griffiths

26  explained left shoulder x-ray at that time showed no traumatic or degenerative

27  changes but ordered an MRI due to "history and exam suggestive of significant

28  rotator cuff tear at her left shoulder."  Tr. 435.  Based on the MRI findings, as

noted by the ALJ, Plaintiff then underwent left side rotator cuff repair in May 2019.  Tr. 23.

The state agency reviewer, Dr. Fitterer, provided his reconsideration opinion in April 2019.  Tr. 105-08.  There is no evidence in the reconsideration decision that Dr. Fetterer was aware of the results of the March 22, 2019 MRI, and the state agency medical reviewers only gave Plaintiff limitations for her established impairments; the ALJ, however, noted the progression of her left shoulder impairment throughout the period at issue in the decision, including objective findings including decreased range of motion, evidence of a tear on MRI, and resultant left shoulder surgery in May 2019.  Tr. 21-22.  While the ALJ adopted the state agency opinion, with the limitations for her established right shoulder impairment as of the reconsideration determination, the ALJ failed to include similar or any limitations for her left shoulder impairment, despite finding a severe bilateral shoulder impairment.

The ALJ also concluded that Plaintiff's impairments including her shoulders improved with treatment. Tr. 22-23.  The ALJ noted, for example, that "during an appointment in early 2020, [Plaintiff] reported ongoing left shoulder pain but noted that she was 'doing very well' with regard to her left shoulder." Tr. 22 (citing Tr. 577).  This is a misstatement of the record, however, as the evidence shows she reported she was 'doing very well' with regard to her *right* shoulder at that time but endorsed ongoing left shoulder pain.  Tr. 577.  In fact, the ALJ is citing a visit to review updated MRI findings in 2020, which showed a new or persistent tear of the left shoulder.  Tr. 577-79.

The state agency physical medical opinions are from December 2018 and April 2019 and did not take her left shoulder impairment into consideration, as there was limited objective evidence of this impairment at that time; the state agency reviewers did give her limitations for the same impairment on the right side, however, explaining exertional, postural and overhead reaching limitations on

the right side were needed due to Plaintiff's "right shoulder limitations in [range of motion]." *See* Tr. 107. Plaintiff points out, however, that records after that time, including from her orthopedic surgeon, show objective findings of left shoulder limitation including reduced range of motion despite May 2019 left shoulder surgery; and she was a candidate for additional shoulder repair at the time of the 2020 hearing due to incomplete healing, persistent tear, or retear of her left rotator cuff. ECF No. 16 at 14; *see* 573-75. The ALJ failed to address relevant evidence after the state agency review in assessing the state agency physical opinions under the factors required by the regulations. The ALJ's finding that the state agency physical opinions were persuasive because they are supported by the physical exam findings showing Plaintiff to have some limitation in her shoulders and knees, but improved strength, gait, and range of motion with treatment is therefore not supported by substantial evidence for the entire period at issue.

The ALJ also found the opinions of Dr. Stanley and Dr. Fitterer were "consistent with [Plaintiff's] statements throughout the record regarding her functioning." Tr. 24. The ALJ must consider the factor of consistency when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). However, the ALJ must consider all the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

As discussed *supra*, The ALJ erred in misstating Plaintiff's reports of improved functioning on the left in 2020. Additionally, the ALJ did not discuss relevant findings from multiple treating providers after the state agency review, including her orthopedic specialist's report of objective findings such as persistent

reduced left shoulder range of motion and decreased strength upon exam, which are more consistent with Plaintiff's reports of functioning. *See, e.g.*, 416-418, 432-44, 575, 577.  In selectively citing evidence that tended to support her conclusions, when the record showed more mixed findings, the ALJ's conclusion that the state agency opinions were persuasive because they were consistent with [Plaintiff's] statements throughout the record regarding her functioning is also not supported by substantial evidence.

Further, the state agency opinions are the only medical opinions in the record, and the reviewers failed to consider or were not aware of her left shoulder impairment at the time of review.  The ALJ, however, had the opportunity to review the record as a whole, including newer evidence of failed surgical repair and/or re-tear of the left rotator cuff; and despite finding severe impairments including "status-post repair of bilateral shoulder rotator cuff tears," Tr. 17, the ALJ failed to provide any left side limitations or seek additional medical opinion evidence to better determine Plaintiff's limitations from all her impairments.

Plaintiff also contends the ALJ erred in evaluating the state agency psychological consultants' opinions.  ECF No. 16 at 15-16.  As this case is remanded to reconsider the state agency physical opinions, the ALJ shall reconsider all prior administrative findings.

Upon remand, the ALJ is instructed to order physical and mental consultative examinations and to reconsider all medical opinions with the assistance of medical expert testimony.  The ALJ is to reassess all medical opinions with the factors required by the regulations and to incorporate the limitations into the RFC or give reasons supported by substantial evidence to reject each opinion.

**B.    Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony.  ECF No. 16 at 6-11.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence. Tr. 20.

The ALJ found that Plaintiff's allegations were not consistent with the medical evidence and that Plaintiff improved with treatment. Tr. 21-23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Id*. at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Additionally, a favorable response to treatment can undermine a claimant's complaints of debilitating symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Here, as discussed *supra* in relation to the medical opinion evidence, the ALJ failed to adequately discuss relevant objective findings; the ALJ also misstated Plaintiff's statement regarding improvement of her left shoulder impairment, which resulted in an inaccurate characterization of the record during the period at issue.  Again, objective evidence showed Plaintiff's left shoulder impairment, at least, had not improved; it had worsened by the time of the hearing, which is consistent with her symptom reports.  The ALJ also cited evidence that supported Plaintiff's symptom complaints, including that she underwent "bilateral shoulder surgeries due to tears," and that repeat MRI in 2020 showed another tear in her left rotator cuff.  Tr. 22-23.  The ALJ's conclusion that the objective medical evidence was inconsistent with her symptom claims and that she improved with treatment are not supported by substantial evidence.

The ALJ also concluded that Plaintiff's activities were inconsistent with her allegations.  Tr. 21-23.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found Plaintiff was able to perform cooking and cleaning and that she cared for several young children.  Tr. 21-23.  However, none of these activities are inconsistent with Plaintiff's allegations of chronic pain and other

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

symptoms preventing her from working a full-time job during the period at issue. The Ninth Circuit has repeatedly found that the ability to perform these kinds of activities is not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Plaintiff testified that she was having health problems prior to her grandchildren coming to live with her, and that she left her prior workplace due to health concerns including difficulty walking. Tr. 40-41. She also testified she did not lift heavy things at home and that she dropped things, including dishes and her hairbrush, and that she had difficulty putting her shirt on over her head. Tr. 52. In her 2018 function report, Plaintiff reported she needed help with cooking and housework, including cutting meat or vegetables and lifting a laundry basket. Tr. 268-71.

Further, while the ALJ found that Plaintiff was "able to engage in significant childcare duties during the period at issue," and repeatedly noted the fact that she took in multiple grandchildren to discount her symptom claims, the ALJ provided no analysis or specific examples of caregiving activities except that her grandchildren lived with her during the period at issue. *See* Tr. 20-23. If caregiving activities are to serve as a basis for the ALJ to discredit Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017). Here, Plaintiff testified that two grandchildren lived with her at the time of the hearing, and her husband and seventeen-year-old daughter helped care for them. Tr. 57-58. The

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

ALJ provided limited analysis of Plaintiff's ADLs and did not detail Plaintiff's childcare activities. While care activities may rebut a claimant's symptoms claims, without any analysis of childcare activities the ALJ's conclusion that Plaintiff's activities were inconsistent with her symptom claims is not supported by substantial evidence.

Upon remand the ALJ is instructed to reevaluate Plaintiff's symptom claims in the context of the entire record.

**C.    Step Five Analysis**

Plaintiff argues the ALJ erred in determining Plaintiff's RFC at step five and relying on the vocational expert's response to an incomplete hypothetical. ECF No. 16 at 16-19. Having determined a remand is necessary to readdress the medical source opinions and Plaintiff's subjective complaints, the Court declines to reach this issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Upon remand, the ALJ is instructed to perform the sequential analysis anew, including reconsidering the step-five analysis.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits. ECF No. 16 at 19. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further proceedings are necessary to resolve conflicts in the record, as well as to further develop the record.

The ALJ's decision is not supported by substantial evidence and not free of harmful error.  On remand, the ALJ shall obtain physical and mental consultative examinations and obtain all updated medical evidence. The ALJ is instructed to reevaluate the medical evidence of record with the assistance of medical expert testimony, making findings on each of the five steps of the sequential evaluation process.  The ALJ shall reassess all medical opinion evidence using the factors required by the regulations, and shall also reassess plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.      Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3.      The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 24, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE